UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HAROLD OROZCO FRITZ,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**REALPAGE, INC,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **C.A. NO.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

1. This is a consumer class action based upon Defendant RealPage, Inc.'s widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") and New York Fair Credit Reporting Act ("NYFCRA"), NY Gen. Bus. Law §§ 380 *et seq*.

2. Defendant violates the important protections in the FCRA and NYFCRA by improperly associating innocent consumers with terrorists, narcotics traffickers, money launderers, arms dealers, and other criminals subject to government sanctions.

3. Defendant's conduct deprives consumers of their rights under federal and state law and results in widespread harm.

### II.  JURISDICTION & VENUE

4. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331, 1332.

1

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### III. PARTIES

6. Plaintiff Harold Orozco Fritz is an adult individual who resides in Rochester, New York.

7. Defendant RealPage, Inc. ("RealPage" or "Defendant") is a consumer reporting agency that regularly conducts business in the State of New York in its own name and as "On-Site." Defendant RealPage, Inc. maintains a principal place of business at 4000 International Parkway, Carrolton, Texas.

### IV. FACTUAL ALLEGATIONS

A. **International Financial Sanctions Lists**

8. One common method of enforcing foreign policy and national security goals is the administration and enforcement of economic trade sanctions through the maintenance of a publicly available list of sanctioned individuals and entities by the government.

9. The United States maintains a number of such sanctions lists, including the Specially Designated Nationals List, maintained by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"). *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014) (citation omitted), *aff'd in relevant part*, 951 F.3d 1008 (9th Cir. 2020).[1]

10. OFAC directs those sanctions at, among others, terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction, and

---

[1] *See also*, U.S. DEP'T OF THE TREASURY, *OFAC FAQs: General Questions*, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited November 24, 2020).

publishes a list of those "Specially Designated Nationals" ("SDNs") and "Blocked Persons" on its website (the "OFAC List").[2]

11. Persons on the OFAC List are legally ineligible for credit in the United States, may not be employed, and may even be subject to deportation or criminal prosecution.

12. The full OFAC List as maintained by the Treasury Department is publicly available information, and whether a person is on the OFAC List is a matter of public record.

13. Persons in the United States are generally prohibited from doing business with, including extending credit to, individuals on the OFAC List. Noncompliance carries potential civil and criminal penalties. *See* 31 C.F.R. § 501 App. A, II.

14. Similarly, the Canadian government maintains the Consolidated Canadian Autonomous Sanctions List ("CCAS List"), which includes individuals and entities subject to specific sanctions regulations made under a series of Canadian laws."[3]

15. These sanctions are imposed against individual and entities the Canadian government has identified as "(i) responsible for, or complicit in, extrajudicial killings, torture or other gross violations of internationally recognized human rights; (ii) responsible for, or complicit in ordering, controlling or otherwise directing significant acts of corruption; or (iii) associated with terrorist activities, including with the Taliban, ISIL (Da'esh) and Al-Qaida."[4]

16. Individuals on the CCAS List may be subject to a wide range of restrictions and penalties, and Canadian law prohibits individuals and entities from doing business with listed

---

[2] UNITED STATES TREASURY DEP'T, *Specially Designated Nationals and Blocked Persons List*, https://www.treasury.gov/ofac/downloads/sdnlist.pdf (last visited November 24, 2020).

[3] GOVERNMENT OF CANADA, *Consolidated Canadian Autonomous Sanction List*, https://www.international.gc.ca/world-monde/international_relations-relations_internationales/sanctions/consolidated-consolide.aspx?lang=eng (last visited November 24, 2020).

[4] GOVERNMENT OF CANADA, *Current Sanctions Imposed*, https://www.international.gc.ca/world-monde/international_relations-relations_internationales/sanctions/current-actuelles.aspx?lang=eng#:~:text=Canadian%20sanctions%20are%20imposed%20under%20the%20United%20Nations,against%20countries%20or%20individuals%2C%20consult%20the%20relevant%20regulations (last visited November 24, 2020).

persons, specifically including financial services. *See, e.g.* Special Economic Measures Act, S.C. 1992, c. 17 § 4(2)(e).

17. Like the OFAC List, the CCAS List is made publicly available by the Canadian government.

### B. The Inclusion of Terrorist Sanctions List Information On Consumer Reports Is Regulated By Federal and New York Law

18. The FCRA and NY-FCRA contain substantially similar provisions, and are generally interpreted in tandem. *See, e.g.*, *Ali v. Vikar Mgmt., Ltd.*, 994 F. Supp. 442, 498 (S.D.N.Y. 1998).

19. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

20. The FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

21. The NYFCRA likewise requires that CRAs "maintain reasonable procedure designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." N.Y. Gen. Bus. Law § 380-j(e).

22. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do meet that standard by suggesting that certain consumers as "possible" matches for individuals on a terrorist sanctions list. *Ramirez v. Trans Union, LLC*, No.12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

23. In 2010 in *Cortez*, the U.S. Court of Appeals for the Third Circuit found that OFAC information is subject to the maximum possible accuracy standard, and that a CRA acted "reprehensibly" and was in willful violation of FCRA section 1681e(b) by using only first and last name to associate consumers with criminals on the OFAC list.  617 F.3d at 707-08, 723.

24. Later, a court in the Northern District of California certified the FCRA section 1681e(b) claims of a class of 8,192 individuals who a CRA inaccurately associated with the OFAC list.  *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014).  A jury found that the CRA's matching procedures willfully violated the FCRA. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632-JSC, 2017 WL 5153280, at *2-3 (N.D. Cal. Nov. 7, 2017) (upholding jury's verdict).

25. Moreover, CRAs may not shift their duty to assure accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing* Cortez, 617 F.3d at 708).

**C. Defendant's Sale of Terrorist Sanctions List Records**

22. Defendant is a consumer reporting agency specializing in the sale of consumer reports to prospective landlords, known as tenant screening reports.

23. Defendant operates its business through two wholly-owned subsidiaries, or "divisions": "On-Site" and "LeasingDesk," which produce reports branded as "On-Site" reports and "LeasingDesk" reports. *See McIntyre v. RealPage, Inc.*, __ F.R.D. __, 2020 WL 5017612, at *1 (E.D. Pa. Aug. 25, 2020).

24. Notwithstanding these two different brands, Defendant operates a unified screening business, where the same policies and procedures apply to both divisions, and employees have duties and responsibilities that span both divisions. *Id.*

25. Defendant is regulated by the FCRA and the New York analogue, the NYFCRA.

26. As part of its tenant screening business, Defendant offers a product which purports to search international terrorist sanctions lists and include the results of such searches on the consumer reports Defendant compiles and sells.

27. Defendant's practices for matching terrorist sanctions list information to individuals on the consumer reports it sells are uniform and not unique to each consumer or transaction.

28. In preparing reports which include this product, Defendant searches both the OFAC List and the CCAS List. However, results appear under a heading which references only the OFAC List.

29. Furthermore, in preparing reports which include this product, Defendant fails to follow reasonable procedures to assure the maximum possible accuracy of the terrorist watch list information it sells about consumers, regularly making inaccurate associations between innocent people with criminals on international sanctions lists.

30. Defendant relies upon wholly inadequate matching procedures to associate individuals who are the subject of its tenant screening reports, regularly placing sanctions list information on consumer reports using only a name.

31. Defendant does this because it wants to provide some sanctions list information information to its customers (accurate or not), in order to maximize its profits and demonstrate that its products "work."

32. Defendant thus intentionally employs procedures that maximize the likelihood of a match between a data on a sanctions list and consumers, compromising accuracy.

33. Defendant furthermore fails to adequately distinguish between the OFAC List and the CCAS List, causing substantial confusion and difficulty in identifying the source of the problem and correcting the inaccuracies.

34. Additionally, Defendant does not provide sufficient information about the allegedly matching record to allow a reader of the report to determine why the record appears on the report. Defendant's failure to set forth the full additional information available in the public record of the applicable sanctions list prejudices consumers' ability to prove that the record does not pertain to them, either to the user of the report when trying to obtain credit, or to the seller of the report when dispute the accuracy of the information.

35. Defendant's reporting of sanctions list information is not accidental, but instead a result of deliberately designed policies and procedures.

36. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

**D. The Experience of Plaintiff Harold Orozco Fritz**

37. In the spring of 2020, Plaintiff Harold Orozco Fritz sought to move to a new apartment in the Rochester, New York area.

38. In or around March 2020, Plaintiff applied to rent an apartment from Villas of Victor.

39. In connection with his rental application, Villas of Victor requested a consumer report about Plaintiff from Defendant RealPage, and provided Defendant with Plaintiff's full name, social security number, and date of birth.

40. Defendant RealPage produced a consumer report about Plaintiff using its standardized procedures.

41. Pursuant to these procedures, Defendant included on the report under the header "OFAC SDN Search" the following record:

> Harold E. Orozco Fritz Country: Ukraine; Schedule: 1; Item: 80 (individual) [Consolidated Canadian Autonomous Sanctions].

nment sanctions list.

43. Schedule 1, Item 80 of the publicly available CCAS List for Ukraine refers to an individual named Alexey Milchakov, with listed aliases of "Fritz" and "Serbian."[5]

44. Neither Alexey Milchakov nor anyone using the name or alias "Fritz" appear on the OFAC List.

45. Defendant appears to have matched Plaintiff to the CCAS List entry for Alexey Milchakov using only the name "Fritz."

46. Villas of Victor denied Plaintiff's rental application based on information in Defendant's report.

47. Plaintiff disputed the accuracy of the record appearing in the "OFAC SDN Search" section of the report, stating that the record did not belong to him, and that he was not from Ukraine.

48. In or around April 2020, Plaintiff applied to rent an apartment from Auburn Creek Apartments.

---

[5] According to a Ukrainian human rights organization that partners with Amnesty International, Alexey Milchakov is a Russian neo-Nazi who has committed war crimes in Ukraine, and goes by the nickname "Fritz." *See* Kharkiv Human Rights Protection Group, "Russian wanted for war crimes in Donbas arrested in Norway" Oct. 21, 2016, *available at* http://khpg.org/en/index.php?id=1476975539 (last visited November 24, 2020).

49. In connection with his rental application, Auburn Creek Apartments requested a consumer report about Plaintiff from Defendant RealPage, and provided Defendant with Plaintiff's full name, social security number, and date of birth.

50. Defendant RealPage produced a consumer report about Plaintiff using its standardized procedures and provided it to Auburn Creek Apartments.

51. Pursuant to its standardized procedures, and despite being on notice from Plaintiff's dispute that the sanctions list record did not belong to him, Defendant again included the same record set forth above on the report to Auburn Creek Apartments.

52. Plaintiff's rental application to Auburn Creek Apartments was denied based upon information in Defendant's report about Plaintiff.

53. Plaintiff disputed the accuracy of the sanctions list record on the report to Auburn Creek Apartments, and Defendant removed the inaccurate information, but by then he had already lost the rental opportunity.

54. Defendant's inaccurate and incomplete reporting of the sanctions list information defamed Plaintiff, and he was repeatedly denied rental opportunities based upon Defendant's inaccurate and incomplete reports about him. Plaintiff furthermore sustained other damages including harm to reputation and emotional distress.

## V.   CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on behalf of the following Classes and Subclasses:

   (a) **National Sanctions List Class**: All natural persons residing in the United States and its Territories about whom Defendant sold a consumer report to a third party that included any sanctions list record, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

   (b) **National CCAS List Subclass**: All natural persons residing in the United States and its territories about whom Defendant sold a consumer report to a

      third party that included a CCAS List record on the report which appeared under a heading referencing only the OFAC List, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

  **(c) <u>New York Sanctions List Class:</u>** All natural persons residing in the State of New York about whom Defendant sold a consumer report to a third party that included any sanctions list record, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

  **(d) <u>New York CCAS List Subclass</u>**: All natural persons residing in the State of New York about whom Defendant sold a consumer report to a third party that included a CCAS List record on the report which appeared under a heading referencing only the OFAC List, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

56. Plaintiff reserves the right to amend the definitions of the Classes and Subclasses based on discovery or legal developments.

57. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

58. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether Defendant follows reasonable procedures to assure maximum possible accuracy of the sanctions list information on its consumer reports; and (2) whether Defendant acted willfully or negligently.

59. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

60. **Adequacy**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

61. **Injunctive Relief. Fed. R. Civ. P. 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New York Sanctions List Class (including the New York CCAS List Class) as a whole.

62. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by

allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

### VI.     CAUSES OF ACTION

#### COUNT I
#### (CLASS CLAIM)
#### 15 U.S.C. § 1681e(b)

63.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

64.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

#### COUNT II
#### (CLASS CLAIM)
#### N.Y. Gen. Bus. Law § 380-j(e)

65.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66.     Pursuant to N.Y. Gen. Bus. Law. § 380-l and § 380-m, Defendant is liable for failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it sold about consumers, in violation of N.Y. Gen. Bus. Law § 380-j(e).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On Count I:

    1.    An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

    2. An order entering judgment in favor of Plaintiff and the Classes and against Defendant for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

    3. An order entering judgment in favor of Plaintiff and the Classes and against Defendant for actual damages pursuant to 15 U.S.C. § 1681o;

    4. An order granting costs and reasonable attorneys' fees;

    5. An award of pre-judgment and post-judgment interest as provided by law; and

    6. Such other relief as the Court deems just and proper.

On Count II:

    1. An order certifying the case as a class action on behalf of the proposed New York Sanctions List Class and New York CCAS List Subclass under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

    2. An award of compensatory and punitive damages to be determined by the jury;

    3. An award of injunctive and declaratory relief to rectify Defendant's unlawful practices;

    4. An award of costs and reasonable attorneys' fees;

    5. An award of pre-judgment and post-judgment interest as provided by law;

    6. Such other relief as the Court deems just and proper

**TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: December 7, 2020.  By:  */s/ Seth Andrews*_____
                                      Seth J. Andrews, Esq.
                                      Law Offices of Kenneth Hiller, PLLC
                                      *Attorneys for the Plaintiff*
                                      6000 North Bailey Ave., Suite 1A
                                      Amherst, NY 14226
                                      (716) 564-3288
                                      Email: sandrews@kennethhiller.com

**FRANCIS MAILMAN SOUMILAS, P.C.**

JAMES A. FRANCIS*
JOHN SOUMILAS*
LAUREN KW BRENNAN*
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

*Pro hac vice* applications forthcoming

*Attorneys for Plaintiff*